# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

LANCE REBERGER,

    *Plaintiff*,

vs.

OFFENDER MANAGEMENT DIVISION, *et al.*

    *Defendants*.

3:12-cv-00293-LRH-VPC

ORDER

    This prisoner civil rights action by a Nevada state inmate comes before the Court on plaintiff's second (#4) application for leave to proceed *in forma pauperis*, on his two motions (## 4 & 8) to raise his prison copy credit limit, and for initial review under 28 U.S.C. § 1915A.

    On the pauper application, the Court finds that plaintiff is unable to pay a substantial initial partial filing fee. The application therefore will be granted, subject to the remaining provisions herein. The Court thus turns to initial review of the complaint.

### *Screening*

    When a "prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," the court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

    In considering whether the plaintiff has stated a claim upon which relief can be granted, all material factual allegations in the complaint are accepted as true for purposes of initial review and are

to be construed in the light most favorable to the plaintiff. *See, e.g., Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980). However, mere legal conclusions unsupported by any actual allegations of fact are not assumed to be true in reviewing the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-81 & 686-87 (2009). That is, bare and conclusory assertions that constitute merely formulaic recitations of the elements of a cause of action and that are devoid of further factual enhancement are not accepted as true and do not state a claim for relief. *Id.*

Further, the factual allegations must state a plausible claim for relief, meaning that the well-pleaded facts must permit the court to infer more than the mere possibility of misconduct:

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S.Ct. 1955 (brackets omitted).
>
> . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 556 U.S. at 678.

Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Plaintiff Lance Reberger alleges that he was transferred to Ely State Prison ("Ely") in retaliation for his having filed a motion for a preliminary injunction, under circumstances discussed in more detail below. In three counts, plaintiff alleges that the retaliatory transfer denied him due process of law under the Fifth Amendment (Count I), constituted cruel and unusual punishment in violation of the Eighth Amendment (Count II), and due process of law under the Fourteenth Amendment (Count III). He seeks injunctive and declaratory relief as well as compensatory damages for mental anguish, emotional distress, and pain and suffering along with punitive damages. He seeks recovery from the "Offender Management Division" (OMD) and its administrator in their individual and official capacities.

Plaintiff may not obtain relief under any of the constitutional provisions that he expressly invokes in the three counts. Whatever constitutional protection is provided against retaliation for engaging in litigation activity, it does not arise under either the Due Process Clause of the Fifth or Fourteenth Amendments or by virtue of the Eighth Amendment's prohibition against cruel and unusual punishment. A state inmate has no constitutionally protected due process right to to be housed in one facility rather than another. *See,e.g., Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir.1987). Nor does transfer to a different facility constitute cruel and unusual punishment. Plaintiff's formulaic recitals to the contrary are frivolous.

The First Amendment potentially provides protection against substantial action taken in retaliation for an inmate exercising his right to access the courts. However, plaintiff's allegation that he was transferred to Ely in retaliation for litigation activity is frivolous on its face.

Reberger alleges the following. His caseworker told him on February 16, 2012, that OMD had put him in for transfer to Ely on February 1, 2012. On or about February 23, 2012, Reberger constructively filed an emergency motion for a preliminary injunction in this Court in No. 3:12-cv-00112-RCJ-WGC seeking to block the transfer to Ely. On March 7, 2012, while his motion still was being litigated, Reberger asked his co-worker whether the transfer to Ely had been approved yet, and the caseworker responded that it had not. Thereafter, allegedly on March 15, 2012, the Magistrate Judge in the prior case issued a report and recommendation in which denial of the motion for preliminary injunction was recommended.[1] Purportedly the "next day" (in truth, as reflected by the note below, instead nine days after the hearing where the Magistrate Judge stated to the parties that he found against plaintiff), OMD approved Reberger's transfer to Ely.

Plaintiff urges that it is "obvious" that the defendants transferred him to Ely in retaliation for his having filed the motion for preliminary injunction restraining the transfer that was not granted. Plaintiff's tortured logic not only is not obvious, it is wholly frivolous. What instead is obvious from

---

[1] The record from the prior proceeding in fact indicates: (a) that the Magistrate Judge told the parties at the March 7, 2012, motion hearing that he found that no showing had been made to warrant a preliminary injuction; and (b) that the written report and recommendation was entered on March 12, 2012. On March 7, 2012, the Magistrate Judge specifically denied plaintiff's request that his transfer be delayed until such time as his objection to the report and recommendation (which never was filed) was resolved. See No. 3:12-cv-00112-RCJ-WGC, #10, at 2 (sealed filing).

the nonconclusory allegations of actual fact presented is that defendants did not proceed with the transfer while plaintiff's motion to block the transfer was under consideration and that they proceeded with the transfer only after plaintiff's request for interim relief was rejected.[2] Under plaintiff's tortured "heads I win, tails you lose" logic, defendants could not transfer plaintiff to Ely regardless of the outcome on his motion. If he won the motion, the Court's order would bar defendants from transferring him; and, under plaintiff's flawed logic, even if he lost the motion, defendants could not transfer him because to do so would be in retaliation for his pursuing the motion to block the transfer that plaintiff effectively lost. The Court denied interim relief on plaintiff's motion to block the transfer, and defendants thereafter were fully free to transfer him. Plaintiff's attempt to obtain the relief that instead was denied by conclusorily labeling the following transfer as a transfer in retaliation for his failed request to block the transfer is wholly frivolous.

In this same vein, plaintiff's effort to establish retaliatory intent by arguing that he otherwise would not have been transferred similarly is frivolous. Under the nonconclusory actual factual allegations in the complaint, defendants put in for the transfer *before* plaintiff filed a motion to block that transfer and then, once the Court denied interim relief, the transfer was approved and effectuated. Regardless of what circumstances plaintiff may believe should or should not lead to a transfer, the decision of whether to transfer a particular prisoner from one institution to another is one of the matters committed to the discretion of correctional officials in assessing security and other concerns at the various institutions under their charge.[3] An inmate's belief that he should not be transferred in the circumstances presented does not support an inference of retaliation for litigation activity (particularly alleged retaliation for pursuing an unsuccessful request to block the transfer).

The complaint therefore is frivolous and fails to state a claim upon which relief may be granted.[4]

---

[2] Plaintiff did not file objections to the report and recommendation in the district court, and the action thereafter was dismissed after plaintiff failed to file a complaint in response to an order, with all pending motions denied as moot.

[3] The Court extensively examined correctional officials' reasons for the – then ongoing – effort to transfer plaintiff in the prior action. See No. 3:12-cv-00112-RCJ-WGC, #11 (sealed filing).

[4] The complaint further is subject to other deficiencies. First, the Offender Management Division is not a
(continued...)

Given that the claims presented are at their core frivolous, the Court finds that amendment would be futile.

### *Three Strikes*

Under the "three strikes" provisions of 28 U.S.C. § 1915(g), a prisoner may not proceed *in forma pauperis* if he has brought, on three or more occasions while incarcerated, an action "that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."

The present dismissal constitutes such a "strike" upon the conclusion of proceedings herein. This strike is plaintiff's third. Two prior actions have been dismissed for failure to state a claim, being in particular No. 2:10-cv-02022-GMN-GWF (mandate issued October 30, 2012) and No. 3:11-cv-00073-LRH-RAM (order as mandate issued June 3, 2011). Plaintiff thus has "struck out" under § 1915(g) upon the conclusion of proceedings herein.

### *Copy Credit Limit*

In his two motions to raise his prison legal copy credit limit, plaintiff seeks an "extra" $100.00 for copies in three actions in this Court. The two other actions referenced in the motion have been dismissed, and this action is being dismissed by this order.

Plaintiff thus does not need to make copies for service in any of the actions. Even if the actions had not been dismissed, service may not proceed until after the Court directs service in a screening order. Even in that instance, the Attorney General informally accepts service for many corrections defendants without the requirement for service of hard copies of a summons and complaint. An inmate plaintiff seeking to sue correctional defendants thus would have no occasion to make copies for service

---

[4](...continued)
juridical entity that can be sued. Second, even if it were, as a division of the state corrections department, it may not be sued in federal court due to the state sovereign immunity recognized by the Eleventh Amendment, regardless of the relief sought. Third, the remaining defendant officer may not be sued for monetary damages in his official capacity. Fourth, under 42 U.S.C. § 1997e(e), plaintiff may not recover on the allegations presented for compensatory damages for mental anguish, emotional distress, or pain and suffering. It further is subject to substantial question whether plaintiff in effect can collaterally attack the denial of relief in the prior – fully concluded – case by labeling action fully consistent with the Court's orders in that case as "retaliation" for plaintiff filing a motion to block that very same action that plaintiff failed to block. The Court only notes these additional deficiencies in passing given that the entire complaint is frivolous and fails to state a claim upon which relief may be granted.

unless and until the Court ordered service for a response and then only as to defendants for whom the Attorney General thereafter did not accept service.

Plaintiff thus also has no need to make copies "to file for discovery from all the defendants on all cases." Even if the cases had not been dismissed, discovery would not proceed until the Court issued a scheduling order providing for discovery deadlines. Plaintiff does not need to have his credit limit raised at the outset of an action to direct discovery to all defendants in all of his cases.

Plaintiff further refers to additional actions that he plans to file. If plaintiff indeed files such actions – and overcomes the three-strikes provision referenced in the preceding section – he will have to make his request to raise the copy credit limit with regard to those actions in those actions, not this one.

Finally, the Court notes that it typically does not grant a request to raise an inmate's copy credit limit based upon a bald assertion by the inmate that he has exceeded the limit. The inmate must attach a copy of a recent administrative denial of copies reflecting that he is over the limit. The Court further typically does not grant such requests in multiple $100.00 increments. If a request is approved in the first instance, the Court typically approves only a much smaller amount, such as $10.00, actually necessary to conduct then-ongoing proceedings in the particular case before it. No such need is evident here.

The Constitution does not require that state authorities provide plaintiff either with free copies or with the substantial equivalent of open-ended or unlimited credit for copies. *See,e.g., Gluth v. Arizona Department of Corrections*, 951 F.2d 1504, 1510 (9th Cir. 1991).

The two motions therefore will be denied.

IT THEREFORE IS ORDERED that the second application (#4) to proceed *in forma pauperis* is GRANTED, subject to the remaining provisions herein. Plaintiff shall not be required to pay an initial partial filing fee. However, even if this action is dismissed, the full $350.00 filing fee still must be paid pursuant to 28 U.S.C. § 1915(b)(2).

IT FURTHER IS ORDERED that plaintiff is permitted to maintain this action to a conclusion without the necessity of prepayment of any additional fees or costs or the giving of security therefor. This order granting paupers status shall not extend to the issuance of subpoenas at government expense.

IT FURTHER IS ORDERED that, pursuant to 28 U.S.C. § 1915(b)(2), the Nevada Department of Corrections shall pay to the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits to plaintiff's account (in the months that the account exceeds $10.00) until the full $350 filing fee has been paid for this action. The Clerk shall SEND a copy of this order to the Finance Division of the Clerk's Office. The Clerk shall also SEND a copy of this order to the attention of the **Chief of Inmate Services for the Nevada Department of Corrections, P.O. Box 7011, Carson City, NV 89702.**

IT FURTHER IS ORDERED that plaintiff's motions (## 5 & 8) to raise his copy credit limit are DENIED.

IT FURTHER IS ORDERED that this action shall be DISMISSED as frivolous and for failure to state a claim, with this dismissal counting as plaintiff's third "strike" under 28 U.S.C. § 1915(g) upon the conclusion of proceedings herein. See text, *supra*, at 5.

The Clerk shall enter final judgment accordingly, in favor of defendants and against plaintiff, dismissing this action.

DATED this 29th day of November, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE